UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Felipe Vallejo,<br><br>              Plaintiff,<br><br>       v.<br><br>Commissioner of Social Security,<br><br>              Defendant | No.  1:24-cv-1040-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>(ECF No. 13, 17) |

### I.      Introduction

Plaintiff Felipe Vallejo seeks judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act.

### II.      Procedural Background

On May 3, 2021, Plaintiff applied for SSI.  The claim was denied initially on May 3, 2021, and upon reconsideration on October 22, 2021.  On January 4, 2024, the ALJ held a video hearing.

The ALJ issued an unfavorable decision on March 4, 2024.  AR 6–29.  The Appeals Council denied review on July 3, 2024.  Plaintiff now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3).

### III.      The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

1

Commissioner denying a Claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a Claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding

2

that the Claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the Claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the Claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the Claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given his/her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 3, 2021, the application date.  AR 12.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis in both knees, and obesity.  AR 12.

Also at step two, the ALJ found that Plaintiff had non-severe impairments of: hyperlipidemia, gastroesophageal reflux disease, chronic kidney disease, bilateral carpal tunnel syndrome and depression.  AR 12–14.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14–15.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 404.1567(b) with the following additional limitations: "the claimant can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and he requires an assistive device to be carried in the dominant right upper extremity for ambulating and balancing."  AR 15–21.

At step four, the ALJ found that Plaintiff had no past relevant work.  AR 21.

Finally, at step five, and relying on the VE's testimony, the ALJ found that considering the Plaintiff's age, education, work experience and RFC, Plaintiff could perform the following jobs existing in significant numbers in the national economy: collator, laundry sorter, labeler and ironer. AR 22.

Accordingly, the ALJ concluded that the Plaintiff was not disabled since the application date of May 3, 2021.  AR 22.

## V.     Issues Presented

Plaintiff asserts two claims of error: 1- "The ALJ's Step 5 determination is unsupported by substantial evidence as she failed to find Plaintiff's impairments severe at Step 2."; and 2- The ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations.  MSJ at 3.

### A.     Step 2

#### 1.     Applicable Law

At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. Smolen, 80 F.3d at 1289-90.  Additionally at step two, the ALJ must consider the combined effect of all of the claimant's impairments on his/her ability to function, severe or not. 42 U.S.C. § 423(d)(2)(B); SSR 86–8; SSR 85–28).  "Severe" in this context does not have the same meaning as in common parlance; rather, Step-two inquiry is a "de minimis screening device to dispose of groundless claims." Yuckert, 482 U.S. at 153–54.  An impairment or combination thereof is non-severe only if it is a slight abnormality that has 'no more than a minimal effect on an individuals ability to work.'" Id.

#### 2.     Analysis

Plaintiff contends the ALJ erred in not finding Plaintiff's cervical spine abnormalities to be a medical determinable impairment, much less a severe one.  MSJ at 7.

Defendant counters by arguing that the omission of a severe impairment is immaterial as long as the ALJ considers the limitations from those impairments throughout the remainder of the

analysis. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Resp. at 3.  Defendant argues that the ALJ made no error at step two explaining:

> The ALJ noted that Plaintiff exhibited lumbar and cervical spine tenderness in September 2021 but remained in no acute distress. Tr. 17 (citing Tr. 703). A March 2023 physical exam revealed no spinal tenderness, full range of motion of the neck, and only a mildly tender lower cervical spine. Tr. 17 (citing Tr. 770). In June 2023, Plaintiff reported feeling somewhat better and an exam show no tenderness or scoliosis and full range of motion of the neck. Tr. 17–18 (citing Tr. 781). Subsequent physical examinations continued to show only mild cervical spine tenderness. Tr. 18.

Defendant concludes with the following:

> the Plaintiff does not and cannot demonstrate that his cervical spine requires greater limitations than the ALJ assessed. He argues the ALJ 'ignor[ed] all positive findings or downplay[ed] their severity' but does not point to any specific medical records the ALJ purportedly ignored or mischaracterized." Resp. at 4.

However, for all of the following reasons the Court finds that Defendant's explanation fails to overcome Plaintiff's claim of error.  First, the Defendant did not adequately address the distinction between a non-severe impairment and a non-medically determinable impairment (i.e. no impairment at all).  Step two requires that "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen, 80 F.3d at 1289-90; citing 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991); SSR 86–8; SSR 85–28.

The critical question presented here is whether the ALJ erred in omitting Plaintiff's cervical spine condition from the list of medically determinable impairments.  In a situation where an ALJ has correctly found that a Plaintiff does not have a medically determinable impairment, the ALJ is then under no obligation to discuss or consider the Claimants alleged impairment when formulating the RFC.  However here, the statements Defendant references above do not provide a sufficient discussion to assess whether Plaintiff's cervical spine condition was or was not a medically determinable impairment.

Defendant attempts to dispense of this issue with the following:

> Plaintiff does not and cannot demonstrate that his cervical spine requires greater limitations than the ALJ assessed. He argues the ALJ "ignor[ed] all positive findings or downplay[ed] their severity" but does not point to any specific medical records

the ALJ purportedly ignored or mischaracterized. ECF No. 13 at 7. He only argues that his medical records "contained numerous positive findings, including cervical spine tenderness and pain; positive objective imaging reports, and reduced range of motion." Id. But, again, Plaintiff fails to cite to any records (see id. at 7–8), and as discussed above, the ALJ already acknowledged records noting Plaintiff's cervical spine tenderness and pain.

Resp. at 4.

But contrary to this contention, the following passage from the record reveals that Plaintiff did cite and describe records regarding his cervical spine abnormalities which notably were not just limited to tenderness and pain:

> Plaintiff underwent an x-ray of his cervical spine on March 11, 2020, which showed reverse of lordotic curve compatible with spasm; spurring and disc space narrowing at C5-C6 and to a lesser extent C6-C7 with sclerosis of vertebral endplates; and mild facet arthropathy. Ar. 543. This was noted to indicate evidence of cervical spasm and degenerative discopathy with spondylosis at C5-C6 and C6-7. Ar. 543.

Additionally, Plaintiff cites to positive findings on cervical spine tenderness. MSJ at 5–6 (citing AR 700, 714). These objective findings cited by Plaintiff are significant because "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R § 404.1521. Specifically, the radiologists' findings from a cervical spine x-ray coupled with physical examinations noting tenderness undoubtedly qualify as objective medical evidence from an acceptable medical source that establish a medically determinable impairment, and this is so regardless of the severity.

Defendant further argues that "Plaintiff does not and cannot demonstrate that his cervical spine requires greater limitations than the ALJ assessed." Resp. at 4. But this argument is better suited in a situation where the ALJ first finds a non-severe or severe impairment followed by a discussion regarding the extent to which the ALJ considered the impairment and/or incorporated it into the RFC. In contrast here, the ALJ by incorrectly not finding a medically determinable impairment at step 2 with respect to Plaintiff's cervical spine, caused an absence of a follow up discussion of possible changes that could have or should have been made to the RFC due to

Plaintiff's condition.

It also bears noting that the step two threshold for a severe impairment is not high, it is rather a "de minimis screening device to dispose of groundless claims." Yuckert, 482 U.S. at 153–54. The threshold of establishing a medically determinable impairment, severe or not, is even lower than the de minimis screening standard for a non-severe but medically determinable impairment. Here, this threshold seems to have been met based on the x-ray findings and tenderness upon physical exams as referenced above.

### B.    RFC Generally; FNP Williams' Opinion

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

7

inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at \*6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2.    Analysis

Plaintiff's provider FNP Williams opined in relevant part that Plaintiff: 1- could not walk more than a block without rest or severe pain;  2-could sit for fifteen minutes at a time for a total of less than two hours; 3- could stand for a forty-five minutes at a time for a total of less than two hours; required the ability to shift position at will; 4-would need unscheduled breaks; 5-required a cane for both standing and walking; 6-could occasionally lift less than ten pounds; 7-could rarely twist and climb ladders; 8-could handle objects less than forty percent of the day, finger objects less than five percent, reach forwards for thirty percent, and reach overhead for fifteen percent of the workday; 9-would be off-task fifteen percent of the workday; and 10- was incapable of even low stress work due to his joint issues and fatigue; and would be absent one day per month. AR 662–64.

FNP Williams attributed these limitations to symptoms of chronic lumbar spine pain radiating to bilateral legs.  Id.

Plaintiff's argument as to his second claim of error consists of the following discussion:

> The ALJ stated that she found FNP Williams' opinion unpersuasive as the opinion was not supported by treatment notes that showed Plaintiff was doing well

on medications, had mild pain, and was in no acute distress. Ar. 19. Additionally, the ALJ stated that the provided opinion did not demonstrate the length and frequency of treatment nor did it include a detailed rationale. Ar. 19. However, as discussed further below, this is simply false.

As to the ALJ's notation that the opinions were not supported by treatment notes that demonstrate mild pain and findings, this is merely an example of the ALJ engaging in impermissible cherry-picking of the evidence

. . .

Rather, as discussed in the summary of Plaintiff's medical records above, Plaintiff repeatedly noted that his pain was a nine out of ten without medications (see e.g. Ar. 579), he would have periods of being bed bound (see e.g. Ar. 718), and FNP Williams' examinations, when conducted, demonstrated spinal tenderness without description that the pain was mild. Supra. As such, the ALJ's assertion and citation to only two examples in the entirety of the evidence provided cannot be found to provide substantial evidence. Ar. 19 (citing Ar. 800, 803).

Further, as to the ALJ's assertion that the opinion did not supply information about the length and frequency of treatment or a detailed rationale, this is again undermined by the evidence of record. Specifically, although FNP Williams did not note on the opinion document itself that she treated Plaintiff on a monthly basis for over a year, the record supplies that information for a reasonable party to discern. By providing the full extent of the treatment notes from the initial intake on March 3, 2021 (Ar. 691) through the time when FNP Williams was no longer the provider at RAN Health Services, FNP Williams provided the requisite information. Additionally, as to the ALJ's assertion that FNP Williams did not provide detailed rationales, that is again disputed by the language of the opinion itself. Specifically, on the very first page of the opinion, FNP Williams noted Plaintiff's symptoms, clinical findings, and side effects that caused the extent of the opined limitations. Ar. 662. Particularly as FNP Williams also provided her treatment notes that demonstrated these very symptoms and findings, the ALJ's assertion is wholly unfounded.

Rather, FNP Williams' opinion is fully supported by the evidence of record. Specifically, Plaintiff was noted on objective imaging to have moderate arthropathy of the lumbar spine (Ar. 811), cervical degeneration (Ar. 543), and examination consistently demonstrated tenderness and spasms. Supra. Further, this opinion is consistent with the evidence from other providers, namely Pro-PT, where upon discharge it was noted that Plaintiff continued to have pain and flare ups that were not improved with physical therapy. Ar. 688

MSJ at 10–12.

Initially, as to the ALJ's assertion that FNP Williams failed to demonstrate the length and frequency of treatment, did not include a detailed rationale nor a diagnosis or prognosis, Plaintiff appropriately takes issue.  As Plaintiff explains, the length of treatment can be gleaned from the

9

treatment notes and records supplied by FNP Williams which establishes that FNP Williams treated Plaintiff on a monthly basis for roughly one year during the relevant period starting from the initial intake on March 3, 2021 (AR 691), continuing  through the time when FNP Williams was no longer the provider at RAN Health Services,  which was approximately one year later.

Further, although FNP Williams may not have noted a diagnosis, FNP Williams nevertheless did identify symptoms of lumbar spine pain radiating to both extremities.  This, in conjunction with the MRI findings (AR 811), was sufficient to diagnose degenerative disc of the lumbar spine which the ALJ specified as being a severe impairment at step two.  All agree that Plaintiff has this impairment

As to prognosis, which FNP Williams also left blank on the form, the form elsewhere asks if Plaintiff's impairments have lasted or can be expected to last at least 12 months (which is required by the Act) to which FNP Williams responded "yes."  If additional information were needed about prognosis, neither the ALJ nor Defendant identified what further information was needed.

Next, Plaintiff disputes the ALJ's findings that he was doing well on medications, had mild pain and was in no acute distress.  AR 19.  Plaintiff contends that the record reflects that his pain was 9 out of 10 without medications (AR 579), that he was at times bed bound (AR 718), and that examinations demonstrated spinal tenderness.  Defendant counters that Plaintiff unduly focuses on his 9 out of 10 pain level without medications, when the same record notes 5 out of 10 pain level with medications.  Resp. at 6–7 (AR 579).  However,  a pain level of 5 out of 10 doesn't align with what is considered trivial, particularly when chronic use of opioids is required to prevent a pain level from rising to a 9 out of 10.  In addition, the cited record indicates under "Opioid Risk Stratification" Plaintiff is in the "moderate" risk group.  AR 579.

Next, even if it might reasonably be argued that FNP William's opinion was overstated in finding Plaintiff capable of significantly less than even sedentary exertional capacity, there are

nevertheless a range of exertional levels which exist between FNP William's opinion and the RFC, which specified that Plaintiff could perform essentially the full range of light exertional work. For example, the ALJ need not accept FNP William's opinion that Plaintiff cannot walk more than one block, and if not accepted this would not necessarily equate that Plaintiff can stand/walk 6 of 8 hours as required for light work.

Next, the parties dispute the extent to which FNP William's opinion is supported by or consistent with the medical record. Defendant focuses on 3 records cited by the ALJ including a July 2022 treatment record purportedly reflecting "minimal findings" and Plaintiff denying any loss of mobility. AR 19, (citing AR 730). However, in this treatment record there were no "findings", minimal or otherwise, from an orthopedic or neurological standpoint. Importantly, this visit was for pain medication refills and the only objective findings recorded were vitals, height and weight. Pain was also noted to be 6 out of 10, which is the high end of moderate, not mild. It also appears that the ALJ took "[no] loss of mobility" out of context. The full statement was "denies loss of mobility or bowel or bladder." AR 730. This was noted under "constitutional" which, as the word and context indicates, refers to systemic issues. The notation is not tantamount to an admission that his radicular back pain didn't limit his mobility.

Next, Defendant further asserts that the ALJ properly relied on Plaintiff's reports of "doing well", notations of only mild pain, exams finding only mild cervical spine tenderness and reporting that Plaintiff was in no acute distress. AR 19 (citing AR 800, 803). However, lack of cervical spine tenderness is of limited significance when evaluating FNP William's opinion concerning the functional impact of Plaintiff's lumbar spine impairment, particularly given that the ALJ found no medically determinable impairment concerning the cervical spine.

The ALJ also cites the lack of acute distress 8 times in the decision, which also appear innumerable times throughout the record. However, exam notes variously identify pain scores of

6/10 (AR 793); 8/10 (AR 796); 9/10 (799); 7/10 (AR 803).  As well, the mere lack of acute distress does not necessarily mean that there is an absence of chronic pain.   Further, notations that Plaintiff was "doing well" is non-descript and adds little to the analysis.

Finally, Defendant relies on the ALJ's assertion that FNP Williams's opinion was inconsistent with other evidence such as a June 2022 lumbar spine MRI which revealed "no more than <u>mild</u> abnormalities." AR 19 (citing AR 811, emphasis added).  But despite the finding of "mild disc desiccation, narrowing and annular bulging," the MRI findings also indicated "<u>moderate</u> facet arthropathy" at each lumbar vertebral level from L2 to L4.  AR 811 (emphasis added).

**VI.     <u>Conclusion</u>**

The ALJ erred at step two with respect to Plaintiff's cervical spine, in finding <u>no medically determinable impairment</u> (severe of otherwise) despite imaging and physical examinations documenting cervical spine impairment. The ALJ subsequently acknowledged findings concerning the cervical spine, but these were merely passing references at best given the lack of any finding of a medically determinable impairment.

The ALJ also erred with respect to Plaintiff's severe lumbar spine impairment by erroneously relying on findings that Plaintiff "denies loss of mobility or bowel or bladder (AR 730), which was noted under "constitutional" and thus not tantamount to an admission that Plaintiff's back pain did not limit his mobility.

The ALJ similarly erred in relying on reports of Plaintiff "doing well," along with notations of only mild pain, and reporting that Plaintiff was in no acute distress. AR 19 (citing AR 800, 803). But the notation of "mild pain" under "general examination" is not as useful an indicator of pain as is the numeric pain scale.  The exams within these visit notes variously identify pain scores of 6/10 (AR 793); 8/10 (AR 796); 9/10 (799); 7/10 (AR 803).

Finally, the ALJ did not resolve an apparent inconsistency when describing a June 2022

lumbar spine MRI as revealing "no more than mild abnormalities" despite the notation of "moderate facet arthropathy" at lumbar vertebral levels L2 to L4.  AR 19 (citing AR 811).

### VII.   Order

For these reasons, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1.  Plaintiff's motion for summary judgment (Doc. 13) is **GRANTED**.
2.  Defendant's cross motion (Doc. 17) is **DENIED.**.
3.  This matter is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g), consistent with the Court's findings.
4.  The Clerk of Court is directed to enter judgment in favor of Plaintiff, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **April 16, 2026**            **/s/ Gary S. Austin**
                              UNITED STATES MAGISTRATE JUDGE

13